**November 29, 1990**

CLERK OF COURT
SUPREME COURT, CNMI
FILED

90 NOV 29 P 2: 08

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE ESTATE OF ) APPEAL NO. 90-020
) CIVIL ACTION NO. 88-86P
TERESA MUEILEMAR, )
 Deceased. ) OPINION
)
_____ )

Argued October 5, 1990

Counsel for Appellants: Reynaldo O. Yana
 P. O. Box 52
 Saipan, MP 96950

Counsel for Appellee: Michael A. White
 P. O. Box 222 CHRB
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, BORJA, Justice, and HILLBLOM,
 Special Judge.

BORJA, Justice:

## FACTS

This is a probate proceeding involving the estate of Teresa Mueilemar, deceased (hereafter Teresa), filed on February 3, 1988. The petitioner/administratrix alleges that at the time of her death, Teresa owned, in addition to other lands on the island of Saipan, Lot 1941 and Lot 1937, containing 2.5 hectares. On May

442

20, 1988, certain individuals filed objections to the claim that Lot 1941 and Lot 1937 belonged to the heirs of Teresa.[1] They claimed that such land belongs to the heirs of Ana Piere Mueilemar (hereafter Ana). Teresa was only one of five children of Ana.

After a two day hearing on the objections, the Court decided on November 23, 1988, that the land belonged to the heirs of Teresa. Its findings of fact are summarized as follows:

> 1. Ana Piere Mueilemar originally owned the lands involved in this proceeding. Ana had five children: Carmen, Vicenta, Ignacia, Teresa, and Cornelia. All of the children had issues. Teresa, prior to her death, was blind.
>
> 2. All of the children and grandchildren of Ana have died. Living heirs recall two sets of facts of what happened to the land: A) Either Ana herself, or her daughters, after her death, transferred ownership of the land to Teresa because she was blind; or B) Ana, and now all of her heirs, retained ownership of the land but allowed Teresa to have use of the land, for the duration of her life, because of her blindness.
>
> 3. In 1942, at least part of the land was leased to a Japanese national. The lessors were the 5 children of Teresa and the son of Carmen Mueilemar.
>
> 4. Right after World War II, the land was used by the U.S. military until around 1950. Some heirs of Teresa moved back on the land. None of the heirs of the other 4 sisters of

---

[1] Objectors state in their notice and objection that Lot 1932 is included in their claim. However, the petitioner/administratrix did not include such lot in the estate of Teresa. In addition, Determination of Ownership No. 418 describes the property as "lots #1941 and #1937 except the northern neck of lot #1941 which is now known as lot #1932. . . ."

Teresa ever went back to the land after the military left, except that some visited and picked fruits.

 5. In the late 1940's, the heirs of Teresa claimed the land at the Land and Claims Office. In the early 1950's, the same office issued a Determination of Ownership declaring that the land is owned by the heirs of Teresa. Certain heirs of the sisters of Teresa felt that they had ownership rights to the land, but none made any such claim officially.

 6. The heirs of Teresa filed a claim for damages to the property in the early 1970's with the War Claims Commission. The claims were awarded and received by the heirs of Teresa. None of the heirs of the sisters of Teresa ever filed a claim or received any money from the War Claims Commission.

Both parties adopted the trial court's findings of fact as their statement of the facts.

## ISSUE PRESENTED

Whether the trial court erred in concluding that the lands in question are owned by the heirs of Teresa Mueilemar, deceased.[2]

## STANDARD OF REVIEW

 The conclusion as to the ownership of the lands is a legal conclusion and is subject to de novo review. Sablan v. Iginoef,

---

[2]The issue of the admission of the Determination of Ownership, as framed by the appellant, is an issue that is subsumed in the issue as stated by this Court. We do not agree with the issues as framed by the appellee.

444

No. 89-008 (N.M.I. June 7, 1990).[3]

## ANALYSIS

The trial court stated that it had to weigh the evidence and make a decision based on a preponderance of the evidence. It carefully reviewed all testimony and the land documents from the government agencies and then concluded that the evidence in support of the contention that the land is owned by the heirs of Teresa substantially outweighed the evidence supporting the contention that the land belongs to all the heirs of Ana.

Based on the facts found by the trial court, its conclusion is reasonable and supported by the facts.

Because the parties stipulated that the heirs of Ana P. Mueilemar (other than Teresa or her heirs) never received notice about any hearing leading to the land determination in the 1950's, appellants argue that it was error for the trial court to have allowed the introduction of the determination of ownership into evidence. They contend that, without this evidence, the trial

---

[3]We agree with the appellant that in reviewing the propriety of the admission or exclusion of evidence, we apply the abuse of discretion standard. CNMI v. Delos Santos, 3 CR 661 (D.N.M.I. App. Div. 1989). We have done this in our de novo review.

We disagree with the appellee that the clearly erroneous standard applies. We are not reviewing the findings of fact of the trial court. EDLF v. Pangelinan, 2 CR 451,457 (D.N.M.I. App.Div. 1986) ("When reviewing the findings of fact of the trial court the appellate court uses the clearly erroneous standard."). As noted above, the parties do not dispute the findings of fact. Instead, they adopt them. Our review is simply to determine whether the legal conclusion is supported by the findings of fact made by the court, and agreed to by the parties.

court would not have reached the conclusion that it did. They argue that their due process rights under the 14th Amendment of the U.S. Constitution were violated since the determination of ownership was issued without notice to them. As such, they assert that the trial court should not have allowed such evidence to be introduced.

The record does not reveal any due process violation. A mere lack of notice does not result in a due process violation. Sablan v. Iginoef, supra, slip op. at 4, n.3.

A determination of ownership issued by the former Government of the Trust Territory of the Pacific Islands should be carefully scrutinized before being accepted as conclusive. See Aldan v. Kaipat, 2 CR 190, 193, 194 (D.N.M.I App.Div. 1985), aff'd 794 F.2d 1371 (9th Cir. 1986). In such a scrutiny, a challenger must introduce evidence of the circumstances underlying the claim of a lack of notice. For example, challengers should present evidence as to why notice should have been given to them, i.e., the basis of their claim, that they were on island, that their whereabouts would have been easily ascertainable with a diligent search; why they did not file a claim themselves with the government, i.e., they relied on their sibling or other relative (the basis for their reliance); why they did not object to the use of the land by the claimants; when they received actual notice of the determination; plus any other information that would assist the court in concluding that the title determination should be set aside. Absent evidence

justifying the setting aside of a title determination, we will not address the issue of a due process violation.

Once the determination of ownership is properly shown to be invalid, then it would be erroneous for the court to admit it into evidence as proof of ownership. The trial court would then have to review other relevant evidence to arrive at its conclusion of the ownership of a piece of property.

In this case, the only evidence in support of the argument that the determination of ownership should not be part of the evidence is the fact that the other heirs of Ana never received notice of any hearing that resulted in the determination. This is not sufficient. The admission by the trial court of this document into evidence was proper. It did not abuse its discretion.

But even if the determination of ownership were excluded as evidence, the other facts accepted by the parties sufficiently support the trial court's conclusion as to ownership. These facts are:

> 1. That after World War II only heirs of Teresa lived on the land;
>
> 2. That after the war only heirs of Teresa claimed the land as their own; and
>
> 3. That only heirs of Teresa filed claims with, and only they received awards from, the War Claims Commission for damage to the land.

The evidence is sufficient to support the claim of Teresa's heirs that Teresa, at some point in time, was given this land by her mother, or by her sisters, for herself solely.

447

## CONCLUSION

The trial court's decision is AFFIRMED in all respects.

Jose S. Dela Cruz
Chief Justice

Jesus C. Borja
Associate Justice

Larry L. Hillblom
Special Judge